LIBERTY FARMS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26717, 29899.   Promulgated April 27, 1931.

*Hillyer Brown, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

1300

## OPINION.

MARQUETTE: It is the contention of the petitioner that it issued to certain of its stockholders 710 shares of its capital stock of the par value, and actual value, of $71,000, as compensation to them for their personal guaranty of the interest and principal of an issue of the petitioner's bonds, and that the value of the stock is and should be

considered as an expense of the sale of the bonds and amortized and deducted ratably over the period of their life. The respondent takes the position that the petitioner is not entitled to any deduction at any time on account of the shares of stock in question, for the reason that (1) it acquired no asset therefor and had nothing to amortize, and (2) that the stock had no value.

This Board has held, in *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988, that the expense incurred subsequent to March 1, 1913, in connection with the flotation of a bond issue should be amortized and deducted ratably over the life of the bonds. In this case the evidence establishes that the four stockholders rendered services to the petitioner and the respondent does not question that these services were reasonably worth what the petitioner claims to have paid for them, that is, $71,000. If the payment to the stockholders had been made in money it clearly would have been an expense of the issue and sale of the bonds, and under *Chicago, Rock Island & Pacific Railway Co.*, *supra*, would have to be amortized over the life of the bonds. The issue, then, is narrowed to the question of whether the fact that the petitioner paid for the guaranty of its bonds in stock instead of in money precludes it from treating the value of the stock as an expense of the bond issue and amortizing it and deducting it accordingly.

In our opinion this is a transaction in which we should look through form to substance, and the substance is: (1) as if the petitioner paid to the stockholders $71,000 in money and they immediately invested that amount in the petitioner's stock at par, or (2) as if it sold the stock at par and paid the stockholders in money. The latter view was adopted by the Commissioner in article 33 of Regulation 45, and has been continued in article 33 of Regulations 62, 65, and 69 and is still in force and effect. These regulations were promulgated by the respondent pursuant to authority vested in him by statute, and the position therein adopted, and so long maintained, is not to be lightly ignored. See *Farming Corporation*, 11 B. T. A. 1413.

We are satisfied that the 710 shares of stock issued by the petitioner to its stockholders, as set forth in the findings of fact, had a value of $71,000, which should be treated as an expense of the bond issue herein involved, and amortized and deducted ratably over the life of the bonds. It follows that the respondent erred in disallowing the deduction taken by the petitioner in its returns for 1922 and 1923 on account of said expense.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Black, dissenting: I dissent from the views expressed in the majority opinion. If the corporation had paid out $71,000 in cash in consideration of these stockholders guaranteeing payment of its bonds, I agree that it should be allowed to amortize such amount over the life of the bonds. But it did not pay out cash, but issued its stock in payment of such guaranty and it is my opinion that in issuing its stock, it has nothing to amortize.

In the instant case, when the Liberty Farms Company parted with 710 shares of its capital stock of the par value of $100 per share, it parted with no property. It still remained the owner of all the corporation's property just as it was prior to the issuance of the stock. The only difference in the situation was that whatever equity there was in the owners of common stock before the new stock was issued was divided among 950 shares, whereas, after the issuance of such stock this equity was divided among 1,660 shares. I fail to see where the corporation has anything which it may amortize as a result of the transaction.

Sternhagen agrees with this dissent.